ZOLLE DWORSKY v. E. L. BRAUNSTEIN AND OTHERS.[1]

May 21, 1926.

No. 25,323.

**Evidence sustained verdict that original agreement was executed by a substituted delivery.**

Evidence found to show that there was an agreement executed for a substituted delivery under an original contract rather than the substitution of a new contract of sale.

Appeal and Error, 4 C. J. p. 843 n. 65.
Sales, 35 Cyc. p. 124 n. 35.

[1]Reported in 209 N. W. 14.

Action in the district court for Hennepin county to recover over-payment upon the purchase of merchandise. The case was tried before Dickinson, J., and a jury which returned a verdict in favor of plaintiff. Defendants appealed from an order denying their motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Allen & Fletcher* and *Friedman & Segal,* for appellants.

*Leonard, Street & Deinard,* for respondent.

STONE, J.

Respondent sues as the assignee of a partnership known as the Kansas City Army & Navy Salvage Company. Defendants are co-partners as Braunstein & Son and the firm business is conducted in Minneapolis. One of the partners, E. L. Braunstein, resides and does business on his own account at Pittsburgh. The suit is for an alleged overpayment for 20,000 army blankets. There was a verdict for plaintiff and defendants appeal from the order denying their alternative motion for judgment non obstante or a new trial.

The transaction was conducted on behalf of the Kansas City firm by Peter Markus, one of its members. It was commenced in September, 1920, by his agreeing with defendants through Harry Braunstein, the partner managing the business at Minneapolis, upon the purchase from the government of 40,000 blankets at $2.29 each. At that time the government allowed a discount of 20 per cent on the blankets if sold in lots listing $100,000 or more and a discount of 15 per cent if sold in lots listing at more than $50,000 and less than $100,000. The contract between Markus and Harry Braunstein, largely evidenced by their correspondence, is what they called a "fifty-fifty" deal. Each was entitled thereunder to 20,000 blankets at the list price less discount. Without waiting assurance that the purchase from the government had been or would be consummated, and under date of September 10, 1920, the Kansas City firm mailed to defendants at Minneapolis their check for $10,000 which was stated to be "more than our initial 20% deposit on the blanket deal." As such the receipt of that check was acknowledged by Harry

Braunstein who said that it would be forwarded to his brother at New York "who is arranging this deal."

From the next development we get the controlling issue. Was the initial contract, made between Markus and Harry Braunstein, abandoned at this point or as plaintiff contends was its consummation only interrupted?   On September 17, E. L. Braunstein, having received from his brother Harry the $10,000 check, wired the Kansas City firm objecting to "certain conditions" imposed by Markus. Those conditions are assumed to be the demand of Markus that he should get his half of the blankets at the net as distinguished from the list price.   Braunstein's wire notified him that his "order will not be accepted unless confirmed at prices mentioned and without conditions   *   *   *   wire me confirmation direct otherwise will cancel without condition if unfavorable to you."

Neither Markus nor anyone else representing his firm ever consented in writing, and consent otherwise is denied, to any change in the original joint purchase contract entered into with Harry Braunstein or to its cancelation. The down payment of $10,000 was not returned.   On the contrary Peter Markus testifies that upon hearing from E. L. Braunstein he proceeded to Pittsburgh for the purpose of closing the deal, not any new or modified one, but the original contract with Harry and to get his 20,000 blankets. He met E. L. Braunstein at Pittsburgh and the two proceeded to New York.   Markus testified:

"Mr. Braunstein told me of a deal that he had with the Star Trading Company; that he had to buy from them a certain amount of blankets   *   *   *.   'They want me to take out the entire bunch right away or pay them cash   *   *   *.   They have got a deposit of my money on that deal.'   *   *   *   'Peter' he says, 'I was going to ask you a little favor   *   *   *.   At the government cantonment,' he says, 'we have ninety days to take our blankets, the government allows that, but these people require me to take it out in four or five days.   Now, if it does not make any difference to you—the blankets are just as good, maybe they are better—to take the 20,000

blankets I have with the Star Trading Company * * * in lieu of the lot with the government.' "

That proposition—for the substitution of the Star Trading Company's blankets in lieu of those expected under the joint purchase contract—Markus says he accepted. "I told him I would take these blankets in lieu of the others I had coming." It is unnecessary to go farther into details. According to the testimony of Markus, E. L. Braunstein represented that he needed $40,000 in order to get the blankets released by the Star Trading Company. Markus paid him that sum in New York and got the blankets. The Markus version is denied by E. L. Braunstein. His testimony is that the original joint purchase agreement was never consummated but in place thereof he sold outright to Markus, for the Kansas City firm, the 20,000 Star Trading Company blankets, at the price agreed upon by Markus of $2.25 per blanket.

The issue of fact thus raised—Markus claiming that the original contract was performed through substituted delivery, and Braunstein that there was instead a substituted sale—was resolved against defendants by the jury. Their verdict was reached by giving the Kansas City firm credit for the $50,000 which it had paid and charging it with the 20,000 blankets at $2.29 less a discount of 15 per cent. The testimony of Markus furnishes so much foundation for that solution of the problem that we cannot interfere.

A minor issue has to do with an item of $2,500 paid by defendants to Mr. Lowenthal, a New York attorney, who was retained to compel a delivery of the blankets by the Star Trading Company. That delivery was unduly delayed after that concern had received the $40,000 of Markus' money which fully paid them for the blankets. The question of who is liable as between Markus and E. L. Braunstein for the fee charged by Mr. Lowenthal is, on this record, one of fact. The jury resolved that issue also against defendants. The assignments of error have all been considered and found to present no cause for reversal.

Order affirmed.